HUBERT DE STUERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46015. Promulgated May 31, 1932.

*Charles B. Fernald, Esq.*, for the petitioner.

*James K. Polk, Jr., Esq.*, and *Harold Noneman, Esq.*, for the respondent.

OPINION.

MURDOCK: The provision of the Act of March 3, 1919, 40 Stat., part 1, p. 1311, under which the petitioner claims exemption from tax is as follows:

SEC. 4. That section 3 of the Fourth Liberty Bond Act is hereby amended to read as follows:

SEC. 3. That, notwithstanding the provisions of the Second Liberty Bond Act or of the War Finance Corporation Act or of any other Act, bonds, notes, and certificates of indebtedness of the United States and bonds of the War Finance Corporation shall, while beneficially owned by a nonresident alien individual, or a foreign corporation, partnership, or association, not engaged in business in the United States, be exempt both as to principal and interest from any and all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States or by any local taxing authority.

The statute under which these bonds were issued required that they be issued at par. Act of September 24, 1917, 40 Stat. 288, ch. 56. Most of them were purchased on behalf of the petitioner at less than par and all were redeemed prior to maturity at par. The difference between the amount paid and the amount received on behalf of the petitioner was neither interest nor in lieu of interest. *Willcuts* v. *Bunn*, 282 U. S. 216. *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552. It was income within the accepted definition of that term. Therefore the question is, Would a tax on this difference be a tax on the principal of the bonds? There is a distinction between a tax on the principal of bonds, such as an estate tax (see *Farmers Loan & Trust Co.* v. *Bowers*, 22 Fed. (2d) 464), and a tax on profit obtained from purchase and sale of bonds. *Willcuts* v. *Bunn*, *supra.* Cf. *Hibernia Savings Society* v. *San Francisco*, 200 U. S. 310. The petitioner, however, seeks to distinguish this case because the purchased bonds were not sold, but were redeemed by the Government, a special qualifying circumstance not present in the above case and not distinct from the contracts made by the Government in the bonds themselves. The return in question, he argues, came " to the owner of the security according to the provisions of the obligation and without any further transaction on his part."

An exempting statute such as this one should be strictly construed and the exemption allowed only where founded on plain language. *Hoge* v. *Railroad Co.*, 99 U. S. 348; *Bank* v. *Tennessee*, 104 U. S. 493; *Bank of Commerce* v. *Tennessee*, 161 U. S. 134; *Lewellyn* v. *Harbison*, 31 Fed. (2d) 740; *The Cordon* v. *United States*, 46 Fed. (2d) 719; *Riverdale Co-operative Creamery Ass'n* v. *Commissioner*, 48 Fed. (2d) 711. We do not believe that a government, issuing its obligations at par, would have sufficient interest in the purchase and sale of those obligations below par to provide tax exemption in any case for the profit derived from a purchase below par and subsequent redemption at par. The benefits, if any, which the government would thus derive, would be unreasonably remote. Probably Congress never intended to exempt a profit such as this petitioner had. O. D. 729, C. B. No. 3, July-December, 1920, pp. 123–124, was cited with apparent approval in *Willcuts* v. *Bunn*, *supra.* It is as follows:

In the case of Treasury certificates of indebtedness which are offered by the Government at par and accrued interest and not at a discount, only the coupon interest can be considered exempt from normal tax, and from surtax to the extent provided by the act approved September 24, 1917. Where such certificates are subsequently purchased at a discount, the difference between the purchase price and the par value of the certificates received at maturity is profit subject to both normal tax and surtax. The subscriber for Treasury certificates who sells them at a discount sustains a deductible loss, which is the difference between the par value of the certificates and the selling price. Any gain or loss on the sale of Treasury certificates of indebtedness prior to maturity should be determined in accordance with section 202 of the Revenue Act of 1918.

The *Willicuts* v. *Bunn* case is not direct authority for the decision of this case. The questions involved are quite different. In the present case there is no question of the power of Congress to tax. The obligations are its own and may be taxed. Furthermore, the facts in the two are different. But the principals laid down in that case may apply here nevertheless. The profit in this case was not paid as such by the United States, but resulted from purchases at low prices and retention until the bonds were redeemed when worth par. This profit resulted from a combination of several factors, including capital investment and probably some measure of sagacity. If profit results from these factors where there has been both purchase and sale in the ordinary sense, we see no reason to hold otherwise where there has been either an ordinary purchase or an ordinary sale, as where bonds subscribed for and obtained at par are later sold at a premium or where bonds have been purchased at less than the amount at which they are redeemed. In all such transactions capital has been invested and generally some measure of sagacity has been a factor in the purchase as well as in a sale. The gain may be regarded as " the creation of capital, industry, and skill " and a tax on it is not on the obligation of the United States.

Counsel for the petitioner argues, irrespective of statutory exemption, that the profits arising from these transactions are not taxable to the petitioner under the provisions of section 217(a) of the Revenue Act of 1926, which defines income from sources within the United States, but does not include profits such as arose in this case. However, the provisions of section 217(a) are not an all inclusive definition of income from sources within the United States for the purpose of determining the net income of nonresident alien individuals. This is apparent from section 217(e), which provides that items of gross income, other than those specified in subdivision (a), shall be allocated or apportioned to sources within or without the United States, under rules and regulations prescribed by the Commissioner with the approval of the Secretary. Subdivision (e) contains also some specific provisions in regard to gains from the purchase and sale of personal property. When section 217 is read as a whole and the rules and regulations prescribed by the Commissioner with the

approval of the Secretary considered, articles 324 and 328 of Regulations 69, it is apparent that the profit from the transactions in question in this case must be considered to be income from sources within the United States. Cf. *De Ganay* v. *Lederer*, 250 U. S. 376. Income upon the disposition of personal property is not in any case income from sources without the United States unless there has been a sale outside the United States. The bonds here involved were purchased within the United States and never were outside the territorial limits of the United States. Every act with reference to them which gave rise to the profits, took place in this country pursuant to an order of a court of the State of New York. Nor can the fiction of law that the situs of the personal property is presumed to be the domicile of its owner, save the profits here involved from tax. *De Ganay* v. *Lederer, supra.*

*Judgment will be entered for the respondent.*