LAWRENCE C. PHIPPS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78915.   Promulgated June 2, 1936.

*David A. Reed, Esq.*, and *W. A. Seifert, Esq.*, for the petitioner.
*E. G. Smith, Esq.*, for the respondent.

### OPINION.

VAN FOSSAN: Respondent determined a deficiency of $4,108.17 in gift taxes due from petitioner for the calendar year 1933. The petitioner alleges that:

The Commissioner has erred in including in the total taxable gifts for the calendar year 1933 $160,000 par value Liberty Loan First 3½ per cent Bonds, due June 15, 1947, representing gifts from petitioner to members of his family during 1933. Said bonds contained the express provision that they are free of all taxation except state and federal estate and inheritance taxes, and under the terms of that provision, the assessment of a gift tax upon the transfer of said bonds is erroneous and void.

It is established by the pleadings that on October 3, 1933, petitioner made a gift to his son, Allen R. Phipps, of $100,000 par value of First Liberty Loan 3½ percent bonds due June 15, 1947, and on December 25, 1933, made six gifts of $10,000 each par value of the same issue of bonds to other members of his family.

The following provision appears on the face of the bonds:

\* \* \* The principal and interest of this bond shall be payable in United States gold coin of the present standard of value and shall be exempt, both as to principal and interest, from all taxation, except estate or inheritance taxes, imposed by authority of the United States, or its possessions, or by any State or local taxing authority. \* \* \*

The above provision is quoted from the authorizing statute (40 Stat. 35, ch. 4).

Section 501 of the Revenue Act of 1932 provides:

(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift.

(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; \* \* \*

Petitioner relies chiefly on the maxim *"Expressio unius est exclusio alterius"* and argues that had Congress intended to permit the imposition of gift taxes where Liberty bonds were the subject of the gift, it would have done so expressly as it did as to other obligations in the "Federal Home Loan Bank Act" (47 Stat. 725, 735, ch. 522) which exempts obligations of the bank "from all taxation (except surtaxes, estate, inheritance, and gift taxes) * * *" and as it did in the act creating the "Reconstruction Finance Corporation" (47 Stat. 5, ch. 8) where language identical to that just quoted was used.

The most obvious answer to petitioner's petition is that a gift tax is not a tax on "the principal and interest of this bond" but is an excise on the transfer of the property to another. *Knowlton* v. *Moore*, 178 U. S. 41; *New York Trust Co.* v. *Eisner*, 256 U. S. 345; *Bromley* v. *McCaughn*, 280 U. S. 124. Consequent on the reasoning of *Knowlton* v. *Moore, supra*, is the holding in *Plummer* v. *Coler*, 178 U. S. 115, that a legacy of United States bonds is not exempted from the inheritance tax laws of a state by the provisions of the Act of Congress of July 14, 1870, and the declaration on the face of the bonds issued thereunder exempting them from taxation in any form by or under state authority, for the reason that the inheritance tax is not imposed on the bonds but on the privilege of acquiring property by will or inheritance, which is a right and privilege created and regulated by the state.

Following the same principles, we held in *Edgar A. Igleheart, Executor*, 28 B. T. A. 888; affd., 77 Fed. (2d) 704, that:

The estate tax being a transfer or transmission tax and not a tax on property, the value of Federal Farm Loan bonds issued under the provisions of section 26 of the Federal Farm Loan Act approved July 17, 1916, should be included in a decedent's gross estate for Federal estate tax purposes, notwithstanding that by the provisions of the act such bonds and the income derived therefrom are exempted from "Federal, State, municipal and local taxation."

The logic of these cases leads irresistibly to a conclusion adverse to petitioner's contention. A tax under the provisions of section 501 is an excise on the privilege of making a gift and not a tax on the property given. The taxes referred to in the bond and the taxes provided by section 501 are basically dissimilar.

In view of the fact that the basic nature of the gift tax controls our decision, we do not deem it necessary to discuss *seriatim* the several arguments advanced in support of petitioner's position. The legal principles on which we base our holding are so well established that, in our judgment, merely to state them is to indicate their applicability. See Regulations 79, arts. 1, 2.

Reviewed by the Board.

*Decision will be entered for the respondent.*

McMAHON, dissenting: I dissent from the holding of the majority that the gifts of First Liberty Loan bonds and accrued interest thereon are taxable under section 501 of the Revenue Act of 1932.

On the face of each bond is language taken from the authorizing statute as follows: "* * * The principal and interest of *this bond* * * * *shall be exempt*, both *as to* principal and interest, *from all taxation, except estate* and *inheritance taxes*, imposed by authority of the United States, or its possessions, or by any state or local taxing authority. * * *" (Emphasis supplied.)

This is a mandatory exemption statute, expressly incorporated into the bonds in question. Its language is ordinary, simple and plain, as it should be, for the benefit of prospective purchasers of these bonds and others. It provides that "The *principal and interest of this bond* * * * *shall be exempt* * * * *from all taxation.*" This is broad, inclusive, comprehensive language. It would be difficult, if not impossible, to find English that is more so. These bonds are, in express language, made "*exempt* * * * *from all taxation*", "*both as to principal and interest.*" The words "*as to*", as here used, have broad, inclusive, comprehensive significance. They make the bonds "*exempt from all taxation*" touching either principal or interest or both, except as their "taxation" is expressly permitted in other language of the statute and bonds. There are only two of such express exceptions from this provision making them "*exempt* * * * *from all taxation.*" They are the express exceptions imposing "*estate or inheritance taxes*" "*both as to principal and interest*", as specified in the statute and in the bonds. These express exceptions were necessary to permit "*estate or inheritance taxes.*" Without such exceptions neither "estate" nor "inheritance taxes" touching the principal or interest could be imposed. If only "estate" taxes were expressly excepted from the exemption then they alone, and not "*inheritance taxes*", could be imposed. And by a parity of reasoning, since gift taxes were not expressly excepted, they likewise can not be imposed in view of the broad exemption "from all taxation." Obviously, if Congress had intended to add other exceptions to the exemption, in addition to "*estate* or *inheritance* taxes", it would, at the same time, have expressed its intention to do so. In any event, it did not except gift taxes from the exemption. It is apparent from the omission of Congress to expressly except gift taxes from the exemption that Congress intended that they should be included in the exemption. To hold otherwise is, in effect, to exercise the power of legislation which is reserved, under the Federal Constitution, to Congress alone, by amending the words of the exemption provision "*except estate or inheritance taxes*" by inserting therein immediately before the word "taxes" the words "or gift." We have not authority,

under the Constitution or otherwise, to do this. Even courts are not at liberty to ingraft upon a statute exceptions other than those expressed. *Kendall* v. *United States*, 107 U. S. 123.

The majority opinion correctly points out that the gift tax imposed by section 501 of the Revenue Act of 1932 is an excise tax on the transfer of property; and also correctly recognizes, and it can not be successfully challenged, that estate and inheritance taxes are likewise excise taxes upon the transfer of property. Thus the gift tax imposed by section 501 of the Revenue Act of 1932 is in the same category as inheritance or estate taxes in that all of them are excise taxes on the transfer of property. Since Congress in the statute authorizing the issuance of the Liberty bonds deemed it necessary to except Federal and state estate and inheritance taxes, which, like gift taxes, are excise taxes, from the exemption provided, it is clear that Congress considered that such excise taxes, as well as gift or other excise taxes, would have been prohibited under the general exemption provision had exceptions not been made. It is well settled that the exception of a particular thing from general words of a statute proves that, in the opinion of the lawmakers, the thing excepted would be within the general clause had the exception not been made. *Brown* v. *Maryland*, 12 Wheat. 419; and *Arnold Constable & Co.* v. *United States*, 147 U. S. 494. It is also well settled that an exception in a statute amounts to an affirmation of the application of its general provisions to all other cases not excepted. *Bend* v. *Hoyle*, 13 Pet. 263, and *Kendall* v. *United States*, *supra*. These cases well illustrate the maxim of *expressio unius est exclusio alterius*, which is a maxim of universal application in the construction of statutes. *United States* v. *De La Maza Arrendondo*, 6 Pet. 691. Under the above authorities it is clear that the exemption "from all taxation" contained in the authorizing statute and in the bonds includes gift taxes, since gift taxes are not made the subject of an exception as are estate and inheritance taxes—other excise taxes.

There is another well accepted rule of general application to the effect that taxing laws are to be interpreted liberally in favor of the taxpayer. *Bowers* v. *New York & A. Lighterage Co.*, 273 U. S. 346; and *Burnet* v. *Niagara Falls Brewing Co.*, 282 U. S. 648; and it is also well settled that exemptions in the Federal income tax laws, when begotten from motives of public policy, are not to be narrowly construed. *Helvering* v. *Bliss*, 293 U. S. 144. There can be no question that the tax exemption provided for as to the Liberty bonds in question was provided from motives of public policy. The raising of funds for the prosecution of the World War was a matter of the most vital public concern; and necessary inducements to the lending public were held out. Exemption *"from all taxation"* excepting only *"estate or inheritance taxes"* was a major inducement.

Doubtless, it never occurred to any of the purchasers of the type of bond in question that the exceptions to the exemption extended beyond "*estate* or *inheritance* taxes." It has been held that the words of a statute are to be taken in the sense in which they will be understood by that public in which they are to take effect. *United States* v. *Isham*, 17 Wall. 496. Ordinary laymen, such as those who undoubtedly formed a large part of the public who bought Liberty bonds of the type in question, did not have knowledge of the technical differences between an excise tax, such as a gift tax, and other types of tax, direct or indirect, and were fully justified in concluding that the words "*exempt * * * from all taxation*" meant exactly what they said literally; and they undoubtedly so concluded. Too, in a sense a gift tax *is* imposed upon the principal and accrued interest of all bonds, since it is elementary that such tax is measured by the value of the bonds, including the principal and accrued interest thereof. Too, as heretofore pointed out, the exemption is "*as to*" the "*taxation*" of "*both principal and interest.*"

As stated, the provision for exemption from taxation of gifts of the Liberty bonds in question and the accrued interest thereon was not only definitely prescribed by the Congress, but was inserted in the bonds themselves. It thus created a binding contract obligation upon the Federal Government. *Perry* v. *United States*, 294 U. S. 330. In this case, in which the Supreme Court of the United States had under consideration the provision in the Fourth Liberty Loan bonds that the principal and interest should be payable in United States gold coin "of the present standard of value", the Court stated in part:

* * * There is a clear distinction between the power of the Congress to control or interdict the contracts of private parties when they interfere with the exercise of its constitutional authority, and the power of the Congress to alter or repudiate the substance of its own engagements when it has borrowed money under the authority which the Constitution confers. In authorizing the Congress to borrow money, the Constitution empowers the Congress to fix the amount to be borrowed and the terms of payment. By virtue of the power to borrow money "*on the credit of the United States*," the Congress is authorized to pledge that credit as an assurance of payment as stipulated,— as the highest assurance the Government can give, its plighted faith. To say that the Congress may withdraw or ignore that pledge, is to assume that the Constitution contemplates a vain promise, a pledge having no other sanction than the pleasure and convenience of the pledgor. This court has given no sanction to such a conception of the obligations of our Government.

* * * The binding quality of the promise of the United States is of the essence of the credit which is so pledged. Having this power to authorize the issue of definite obligations for the payment of money borrowed, the Congress has not been vested with authority to alter or destroy those obligations. The fact that the United States may not be sued without its consent is a matter of procedure which does not affect the legal and binding character of its contracts. * * *

We conclude that the Joint Resolution of June 5, 1933, in so far as it attempted to override the obligation created by the bond in suit, went beyond the congressional power.

Even if section 501 of the Revenue Act of 1932 were ambiguous when construed in the light of the authorizing statute, and, hence, it were not clear that Congress intended to exempt the gifts of the Liberty bonds and the accrued interest in question from gift taxes, which is definitely not conceded, the section should be construed as providing for the exemption in order to sustain the constitutionality of such section. Statutes must be construed, if fairly possible, so as to avoid the conclusion of unconstitutionality. *Porter* v. *Investors Syndicate*, 286 U. S. 461. To hold, as is held in the majority opinion, that section 501 imposes a tax upon the gifts of the Liberty bonds and accrued interest thereon in question herein, constitutes an alteration, repudiation or destruction of the obligations of the United States under the bonds. This, as pointed out in *Perry* v. *United States, supra,* is beyond the Congressional power conferred by the Constitution. It is to be noted that in *Perry* v. *United States, supra,* the Supreme Court had under consideration a provision as to the payment of the bond in United States gold coin "of the present standard of value", language identical with that contained in the bonds involved in the instant proceeding and found in the same paragraph with the provision for tax exemption, both provisions being included in the contract obligation of the Federal Government and being of major importance. It may be added that we are here confronted with no question of "procedure" such as was presented there. Here the petitioner is following a "procedure" and resorting to a remedy expressly afforded by statute, in search of relief.

In Treasury Department Circular No. 78, issued May 14, 1917, for the purpose of inducing purchases of these very bonds in question, it is correctly stated as to them that *"the bonds will be exempt,* both as to principal and interest, from all taxation, except estate or inheritance taxes imposed by authority of the U. S. or its possessions, or by any State or local taxing authorities." (Emphasis supplied.) It is well settled that the current, practical interpretation of a statute placed thereon by officials charged with its administration will not be disturbed except for weighty reasons. *Brewster* v. *Gage*, 280 U. S. 327. No such weighty reasons exist in the instant proceeding. As pointed out herein there are weighty reasons to the contrary. Subsequent developments, imaginary or real, unexpected or anticipated, can not be permitted to be determinative in a situation such as we have here presented, upon grounds of expediency or otherwise. See *Perry* v. *United States, supra.*

In the annual report of the Secretary of the Treasury on the state of the finances for the fiscal year ended June 30, 1917, is the following

statement with regard to this issue of bonds: "*The bonds are exempt*, both as to principal and interest, from all taxation, except estate or inheritance taxes imposed by authority of the United States or its possessions or by any state or local taxable [taxing] authorities." (Emphasis supplied.) This is another practical interpretation of the Treasury Department which, likewise, should not be disturbed.

Respondent contends that, since the gift tax was not in force at the time of the authorization and the issuance of the Liberty bonds, Congress could not have intended to exempt gifts of Liberty bonds from any gift tax enacted subsequent to the issuance of the bonds in question. However, Congress, in stating that the exemption should be "from all taxation", undoubtedly intended and meant to exempt these bonds from gift and other taxes subsequently imposed and to convey to the buying public that the exemption should apply to taxes then in force or those which might thereafter be enacted. Such interpretation was correctly placed upon the exemption statute in question by the Treasury Department in Department Circular No. 300, dated July 31, 1923, captioned "United States Treasury Department Regulations with Respect to United States Bonds and Notes." That circular contains the following language: "*Fully tax-exempt obligations.*—[including the bonds in question here] * * * the 3½ per cent bonds of the First Liberty Loan, *are exempt* * * * from all taxation, except estate or inheritance taxes, now or *hereafter* imposed * * *." (Emphasis supplied.) This is another practical interpretation which, likewise, should not be disturbed.

Article 2 of Regulations 79, relating to the gift tax under the Revenue Act of 1932, as amended by Treasury Decision 4550, approved May 21, 1935, C. B. XIV-1, p. 381, provides in part as follows:

* * * Various statutory provisions, which exempt bonds, notes, bills and certificates of indebtedness of the Federal Government or its agencies and the interest thereon from taxation, are not applicable to the gift tax since this tax is an excise tax on the transfer, and is not a tax on the subject of the gift. * * *

To the extent that there is anything in such provision of the regulations calculated to impose a tax upon the gift of the bonds in question in the instant proceeding, it is contrary to the earlier correct current departmental constructions of the statute as heretofore pointed out and contrary to the express provisions of the special statute authorizing the issuance of the bonds and hence void, and it should not be applied in the instant proceeding. The Treasury Department can not, by its regulations, either limit the provisions of a statute or define the boundaries of their constitutional application. *Helvering* v. *Powers*, 293 U. S. 214.

The cases of *Plummer* v. *Coler*, 178 U. S. 115, and *Edgar A. Igleheart et al., Executors*, 28 B. T. A. 888; affd., 77 Fed. (2d) 704, relied upon in the majority opinion, *Bankers Trust Co. et al., Executors*, 33 B. T. A. 746, and *Hubert de Stuers*, 26 B. T. A. 201, and similar cases are distinguishable, since they involved different exemption statutes, which do not provide any exceptions to the exemption which would give rise to the application of the maxim of *expressio unius est exclusio alterius*. Furthermore, *Plummer* v. *Coler*, *supra*, involved the question of the right of a subdivision of a state to tax an estate containing Federal bonds which Congress had declared exempt from taxation by both the Federal and the local governments. That question is not involved here. Even if the Federal Government may not render the transfer of its obligations exempt from local taxation, it may render the transfer thereof, as well as the transfer of the accrued interest thereon, exempt from the Federal gift tax, as it did in the case of the issue of bonds with which we are concerned in the instant proceeding.

The case of *Central Hanover Bank & Trust Co.* v. *United States*, 14 Fed. Supp. 541, in which it was held that the gain or profit derived upon the sale of Liberty bonds of the same issue as those here involved is subject to the Federal income tax, is distinguishable. There the tax sustained by the court is an income tax imposed upon, based on, and measured by the amount of the profit. It is in reality a profits tax. It is not imposed upon, based on, or measured by the "principal and interest" of the bonds. It is not a tax "*as to*" such "principal and interest." The gift tax involved in the instant proceeding is, in all of these respects, different from the tax there involved.

There is no sound escape from the conclusions that Congress did intend to exempt the bonds in question here "*both as to principal and interest*" from gift taxes or similar excise taxes, other than estate and inheritance taxes which were expressly excepted from the exemption; and these bonds and accrued interest thereon are not taxable under section 501 of the Revenue Act of 1932.