AGRICULTURAL SECURITIES CORPORATION, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

MARY W. STEWART, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

A. O. STEWART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT.

Docket Nos. 87668, 90569, 90570, Promulgated May 25, 1939.

*W. G. Harmon, Esq., Ernest L. Wilkinson, Esq., John W. Cragun,
Esq.,* and *Herman Langworthy, Esq.,* for the petitioners.

*Benjamin M. Brodsky, Esq., Paul E. Waring, Esq., Elizabeth B.
Fegan, Esq.,* and *Ellyne E. Strickland, Esq.,* for the respondent.

# 1106

OPINION.

OPPER: The precise question to be decided has not previously come before us. Cases somewhat analogous have determined that profit from the disposition of Government bonds is taxable to a nonresident alien, even though the exemption of principal as well as interest was from "any and all taxation", *Hubert De Stuers*, 26 B. T. A. 201; that Federal obligations are subject to gift tax even though the principal thereof as well as the interest was specifically exempted from all taxation with certain stated exceptions which did not include that tax, *Lawrence C. Phipps*, 34 B. T. A. 641; aff'd., 91 Fed. (2d) 627, (C. C. A., 10th Cir.); and that securities of the character involved in the instant proceeding are subject to inheritance tax, even though the act under which they are issued is silent in this regard, *Edgar A. Igleheart, Executor*, 28 B. T. A. 888; aff'd., 77 Fed. (2d) 704 (C. C. A., 5th Cir.).

Petitioners rely almost entirely upon the inclusion in the legislation under review of the word "income" as opposed to "interest." They say, in effect, in the able and comprehensive treatment of the subject submitted in their behalf, that since income includes capital gains under the Sixteenth Amendment, *Merchants' Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509, the word is to be read as including them for purposes of exemption when it appears in the Farm Loan Act [1] under which these securities were issued.

In this position we are unable to concur. It may be observed first that it is not the word "income" alone but the phrase "income derived therefrom" which we are required to construe. *Stewart* v. *United States*, 24 Fed. Supp. 145. It can no longer be doubted that capital gain is income on which an income tax may be levied. See, e. g., *Eisner* v. *Macomber*, 252 U. S. 189.[2] But it does not follow—considering the transactions of which the security is the mere object which must take place in order for income to result from a purchase or other acquisition and a sale or other disposition—that one can say that the

---

[1] Federal Farm Loan Act, 39 Stat. 380, 12 U. S. C. 931:

SEC. 26. * * * First mortgages executed to Federal land banks, or to joint stock land banks, and farm loan bonds issued under the provisions of this Act, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation.

[2] * * * "Income may be defined as the gain derived from capital, from labor, or from both combined," provided it be understood to include profit gained through a sale or conversion of capital assets * * *. [Page 207.]

income resulting is derived from the security itself. In *Willcuts* v. *Bunn*, 282 U. S. 216, 227, the Supreme Court said:

\* \* \* Because the tax in question is described as an "income tax" and the profits on sales are included in "income", the distinction is not lost between the nature of a tax applied to interest and that of a tax applied to gains from sales. The federal income tax acts cover taxes of different sorts. *Brushaber* v. *Union Pacific Railroad Company*, 240 U. S. 1, 17, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; *Stanton* v. *Baltic Mining Company*, 240 U. S. 103, 114, 36 S. Ct. 278, 60 L. Ed. 546. The tax upon interest is levied upon the return which comes to the owner of the security according to the provisions of the obligation and without any further transaction on his part. The tax falls upon the owner by virtue of the mere fact of ownership, regardless of use or disposition of the security. The tax upon profits made upon purchases and sales is an excise upon the result of the combination of several factors, including capital investment and, quite generally, some measure of sagacity; the gain may be regarded as "the creation of capital, industry and skill." *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 531, 116 N. E. 904, 910, L. R. A. 1917F, 806.

The tax \* \* \* [is not] on the obligations of the State or municipality, or on the investment therein, as such \* \* \*. It would be far-fetched to say that such purchases and sales are instrumentalities of the State \* \* \*.

\*      \*      \*      \*      \*      \*      \*

\* \* \* the tax is not laid upon the contracts made by the State \* \* \*, or upon the amounts payable thereunder, but is laid upon the result of distinct transactions by private owners \* \* \*.[3]

The word "income" may well have been used advisedly in the present connection to connote broader forms of receipt than interest without necessarily including therein the concept of capital gains. Dividends, rent, and similar items are income, see *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S. 1, though evidently not interest. The periodic receipts procured from the investment of capital, which in respect to the ordinary Federal, State or municipal bond can be expected to embrace only interest in its technical sense, might well go far beyond this under the scheme envisaged by the Farm Loan Act. Farm loan bonds were not the obligation of the Federal Government. (Secs. 16, 21.) In lieu of this they were secured by a pool of farm-mortgage collateral deposited with a farm loan registrar.

---

[3] The occasion for the foregoing discussion, as set forth in the opening sentence of the paragraph first quoted, is as follows:

"But it does not follow, because a tax on the interest payable on state and municipal bonds is a tax on the bonds and therefore forbidden, that the Congress can not impose a non-discriminatory excise tax upon *the profits derived from the sale of such bonds.*" [Emphasis added.]

This was evidently thought to be necessary in order to distinguish *Pollock* v. *Farmers Loan & Trust Co.*, 157 U. S. 429, where the language used was:

"Another question is directly presented by the record as to the validity of the tax levied by the Act *upon the income derived from municipal bonds* \* \* \*. But we think the same want of power to tax the property or revenues of the states or their instrumentalities exists in relation to a tax *on the income from their securities* \* \* \*." [Emphasis added.]

(Secs. 19, 22.) Upon the insolvency of a bank, a receiver is provided for (sec. 29) whose function it might be to take over not only the collateral but the underlying real estate and to operate it for the benefit of the bondholders.[4] It could not have been clear that by the use of the term "interest"[5] periodical payments to bondholders resulting from such operation would have been included. See *Penn Mutual Life Insurance Co.*, 32 B. T. A. 839; affirmed on this point, 92 Fed. (2d) 962.

Nor is it by any means clear that even from the investor's standpoint the exemption from capital gains tax would have been an advantageous feature. As Mr. Chief Justice Hughes remarked in *Willcuts* v. *Bunn, supra*, p. 231:

\* \* \* While the tax is laid on gains, there is also a deduction for losses on sales, and whether investors in such securities would consider it an advantage if both provisions were eliminated is a matter of mere speculation.

It follows that the elaborate argument advanced here that Congress must have intended to include these exemptions solely because of its desire to make the securities attractive to purchasers is reduced to the purest conjecture.

In our view, therefore, the assumption that by the use of the phrase "income derived therefrom" Congress necessarily and unmistakably intended to include capital gains may not be indulged.[6] That the term is merely susceptible of such an interpretation will not suffice because other considerations lead to the opposite conclusion. As we said in *Hubert De Stuers, supra*, 204.

An exempting statute such as this one should be strictly construed and the exemption allowed only where founded on plain language [citing cases]. We do not believe that a government, issuing its obligations at par, would have sufficient interest in the purchase and sale of those obligations below par to

---

[4] See "Joint Stock Land Banks, Progress in Liquidation Including Statements of Condition", Report of U. S. Farm Credit Administration, U. S Government Printing Office, 1938, pages 3, 4, 47–51, e. g., page 48 being statement of condition of Chicago Joint Stock Land Bank In Receivership, wherein the following appears under "Liabilities":
Interest on farm loan bonds:

| | |
|---|---:|
| Matured interest unpaid at date of receivership | $134, 955. 00 |
| Unmatured interest accrued to date of receivership | 747, 672. 91 |
| Total | $882, 627. 91 |
| Less liquidation dividend | 639, 905. 24 |
| | 242, 722. 67 |

[5] The fact that the 1938 Act (sec. 817) limited the term to interest, presumably in the strict sense, is inconsequential, since in the meantime joint stock land banks had been put in course of liquidation, Emergency Farm Mortgage Act of 1933, part 2, 48 Stat. 46, 12 U. S. C. 810. See footnote 4, *supra*.

[6] See also *Darby-Lynde Co.* v. *Alexander*, 51 Fed. (2d) 56, 59; certiorari denied, 284 U. S. 666; *Lester W. Fritz*, 28 B. T. A. 408.

provide tax exemption in any case for the profit derived from a purchase below par and subsequent redemption at par. The benefits, if any, which the government would thus derive would be unreasonably remote.

To the use of the language in *Willcuts* v. *Bunn, supra,* petitioners object that, being unnecessary for the decision in the case, it should be disregarded. Without conceding that, an argument no less impelling flows from the direct decision in that case. Congress exempted these obligations from state, municipal, and local taxation to the same extent and by the use of the same language as from Federal taxation. It said:

* * * farm loan bonds issued under the provisions of this Act, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal and local taxation. (Sec. 26.)

The doctrine of *Willcuts* v. *Bunn, supra,* that state obligations are not constitutionally exempt from a Federal capital gains tax, coupled with the recognition that similar principles govern state and Federal enjoyment of such immunities, *Ambrosini* v. *United States,* 187 U. S. 1, 7,[7] leads inevitably to the conclusion that there was serious doubt whether the Congress was authorized to exempt these obligations from capital gains taxes of states, localities and municipalities. Since Congress should not be presumed to have undertaken to provide an immunity possibly beyond its power, *United States* v. *Jin Fuey Moy,* 241 U. S. 394,[8] and since the language it used demonstrates that exemption from Federal and state taxation was to be identical, it follows that the words "income derived therefrom" are not in this context to be construed as including the gain derived from such transactions as those now before us. See *Plummer* v. *Coler,* 178 U. S. 115, 134, 135.

Several further points remain to be considered. It is urged that, regardless of the use of the word "income", the exemption of the bonds themselves is sufficient, at least where sale or redemption took

---

[7] This concept does not appear to have been impaired by later decisions culminating in *Graves* v. *People of the State of New York ex rel O'Keefe,* 306 U. S. 466. Speaking of the possible differences in the two immunities, the Supreme Court there said: "So far as now relevant, those differences have been thought to be traceable to the fact that the Federal Government is one of delegated powers in the exercise of which Congress is supreme; so that every agency which Congress can constitutionally create is a governmental agency." And again: "All the reasons for refusing to imply a constitutional prohibition of Federal income taxation of salaries of State employees, stated at length in the *Gerhardt* case, are of equal force when immunity is claimed from State income tax on salaries paid by the National Government or its agencies."

[8] And see *Graves* v. *New York, supra:* "* * * if it appears that there is no ground for implying a constitutional immunity, there is equally a want of any ground for assuming any purpose on the part of Congress to create an immunity."

place at or below par.[9]   This contention is sufficiently answered by the decision in *Hubert De Stuers, supra*, and many similar cases. Exemptions so broad as to include "the bond" or "principal and interest" have repeatedly been held to be insufficient to prevent the operation of the taxing act upon collateral transactions of which the securities are the subject. *Plummer* v. *Coler, supra; Edgar A. Igleheart, Executor, supra; Lawrence C. Phipps, supra; Central Hanover Bank & Trust Co.* v. *United States*, 14 Fed. Supp. 541; certiorari denied, 300 U. S. 678; see *Willcuts* v. *Bunn, supra*.   It is not clear that petitioners seek to make any distinction between those bonds which were sold at or below par and those which were redeemed.[10] If such a contention were advanced we should not be able to accept it. The argument was made and answered in *Hubert De Stuers, supra*,[11] and in our view the determination there is conclusive upon the question.

It is further contended that the income is clearly derived from the bonds when they are sold because were it not for the bonds this income could not have arisen.[12]   To this contention the same answer may be made.   Were it not for the bonds they could not have been

[9] "The application of a couple of simple tests should demonstrate this beyond peradventure of doubt.

\*          \*          \*          \*          \*          \*          \*

"Test Number Two : Recall that it is among the stipulated facts that every penny paid to the taxpayers on the surrender of the Kansas City Joint Stock Land Bank bonds was paid to them under and by virtue of the covenants of the bonds.   In other words, every penny paid *flowed directly from the bonds.*"   Brief for petitioners, p. 16.

"Again, even if the words "income derived therefrom" are construed to mean "interest" only, still the exemption of the bonds themselves exempts the income involved in all the cases at bar.   For a bond is only a promise to pay a certain amount—a right to receive the face amount thereof.   If the bonds themselves are exempt, clearly any moneys received by a bondholder for his bond—up to the amount of its face value—is likewise exempt. Consequently even if we accept respondent's premise that capital gains are not exempt, only that amount received which is in excess of the face amount of the bonds sold or surrendered, is taxable."   Reply brief for petitioners, p. 4.

[10] See, e. g., footnote 9.

[11] "The petitioner however seeks to distinguish this case because the purchased bonds were not sold but were redeemed by the Government, a special qualifying circumstance not present in the above case [*Willcuts* v. *Bunn, supra*] and not distinct from the contracts made by the Government in the bonds themselves.   The return in question, he argues, came 'to the owner of the security according to the provisions of the obligation and without any further transaction on his part'   \*   \*   \*.

" \*   \*   \*   The profit in this case was not paid as such by the United States, but resulted from purchases at low prices and retention until the bonds were redeemed when worth par.   This profit resulted from a combination of several factors, including capital investment and probably some measure of sagacity.   If profit results from these factors where there has been both purchase and sale in the ordinary sense, we see no reason to hold otherwise where there has been either an ordinary purchase or an ordinary sale, as where bonds subscribed for and obtained at par are later sold at a premium or where bonds have been purchased at less than the amount at which they are redeemed.   In all such transactions capital has been invested.   Generally some measure of sagacity has been a factor in the purchase as well as in the sale.   The gain may be regarded as 'the creation of capital, industry, and skill' and a tax on it is not on the obligation of the United States."   [Pp. 204, 205.]

[12] "Test Number One : Eliminate the bonds entirely from the transactions in question and what is there left?   Nothing.   Without the bonds there could have been no transactions, no gains.   *The bonds are of the very essence, the proximate cause of the gain.*" [This is the omitted portion of the quotation in footnote 9, *supra*.]

bequeathed by a decedent, *Edgar A. Igleheart, supra;* nor have been the subject of a gift, *Lawrence C. Phipps, supra;* nor of disposition by a nonresident alien, *Hubert De Stuers, supra;* nor of a sale, *Central Hanover Bank & Trust Co.* v. *United States, supra.*

Petitioners urge the legislative and administrative history of the subject as conclusive in their favor. In our view, however, the circumstances advanced to support this contention are far from sufficient. We are referred to no instances of a specific administrative reference to the taxability of capital gains on these securities save three. In all other cases set forth the statements used are in the same general, unspecific language as the statute itself. They are therefore no greater indication of administrative construction than is the wording of the act. The first instance specifically dealing with the question is an unpublished memorandum of the General Counsel of the Bureau of Internal Revenue, dated April 3, 1933, which concludes:

> In the instant case, the bonds in question were issued by this taxpayer, and purchased by it at a discount, both under specific authority of the Federal Farm Loan Act. As a result of the purchase, the taxpayer derived income within the meaning of the Revenue Act of 1928. *Kirby Lumber Company* v. *United States, supra.* Under such circumstances, it is the opinion of this office that the income so derived, was derived from the bonds as contemplated by the Federal Farm Loan Act. It is concluded, therefore, that the discount on the taxpayer's own bonds purchased during the taxable year, constitutes exempt income and is, therefore, non-taxable. * * *
>
> * * * * * * *
> * * * (4) that the discount on the taxpayer's own bonds purchased during the taxable year constitutes exempt income and is, therefore, non-taxable.

This was followed by a circular letter dated May 2, 1933, and addressed by the Federal Farm Loan Bureau "To all Joint Stock Land Banks", in which the statement is made: "Fourth: That the discount on your own bonds purchased during the taxable year constitutes exempt income and is, therefore, non-taxable."

On February 28, 1935, the Assistant General Counsel for the Bureau of Internal Revenue issued a memorandum in which the following appeared:

> It does not follow, because a joint stock land bank is exempt from tax upon the income resulting from a purchase of its own bonds, that the profit realized by an individual from a sale of such bonds is not taxable. * * *

For an administrative determination to be so persuasive as to be of assistance in the construction of a statute it must be definitely settled, uniform, and of long standing. *United States* v. *Missouri Pacific Railroad Co.*, 278 U. S. 269, 280; *Alexander* v. *Cosden Pipe Line Co.*, 290 U. S. 484, 498; *Central Real Estate Co.*, 17 B. T. A. 776, 780; affd., 47 Fed. (2d) 1046. It will at once be seen that the

ruling urged here as an administrative construction complies with none of these requirements. On its face it purports only to affect the banks themselves and not other individuals or corporations such as these petitioners. If by implication it could be more broadly construed, that possibility was soon destroyed by the memorandum issued less than two years later and specifically negativing any such construction. And in any event the original memorandum was in effect, without the benefit of the clarification of the later memorandum, for less than two out of the more than twenty years during which the act itself was operative. It is objected that the reasoning of the second memorandum is faulty. This seems to us to be beside the point. The argument is that the administrative construction was in accord with the position now being urged, but, at least taking the two memoranda together, that appears not to be correct. In fact, it may be that the earlier ruling rather than the later was erroneous, and it does not seem to us permissible for a litigant to rely upon one administrative construction as conclusive and in the same breath to seek to escape another by impugning its correctness.

And even if it be assumed that Congress was contemporaneously aware of any such construction, there was in the interim no reenactment or reaffirmance of the original section which could be said to place the stamp of Congressional approval upon the position so taken. Cf. *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110. If anything the intermediate enactment dealing with the subject indicates the contrary. For the Revenue Act of 1934 contains in section 22 a definition of gross income obviously broad enough to include these profits; and the exempting provision contained in section 22 (b) (4) (B) covers only interest and no other category of income.[13] As far as the record shows the first action taken by Congress which can be said to have recognized[14] the existence of an administrative position in this regard was the passage of section 817 of the Revenue Act of 1938[15] which was, as its legislative history shows, designed to correct only the narrow conception of the earlier ruling which the later ruling embodies.

---

[13] SEC. 22. GROSS INCOME.
\*        \*        \*        \*        \*        \*        \*
(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title :
\*        \*        \*        \*        \*        \*        \*
(4) TAX-FREE INTEREST.—Interest upon  \*  \*  \*   (B) obligations of a corporation organized under Act of Congress, if such corporation is an instrumentality of the United States ;  \*  \*  \*

[14] Hearings before Committee on Finance, U. S. Senate, 75th Congress, 3d session on H. R. 9682 [Rev. Bill 1938] pp. 641–3.

[15] SEC. 817. INCOME FROM OBLIGATIONS AND MORTGAGES ISSUED BY JOINT-STOCK LAND BANKS.

Notwithstanding the provisions of section 26 of the Federal Farm Loan Act, as amended, in the case of mortgages made or obligations issued by any joint-stock land bank after the date of the enactment of this Act, all income, except interest, derived therefrom shall be included in gross income and shall not be exempt from Federal income taxation.

Nothing to which we have been referred in the legislative history of section 26 of the Federal Farm Loan Act, save the section just cited, can be said to have any bearing upon the present problem. Here again such statements as appear are so general that they are no more illuminating as to the true meaning of the section than the language of the act itself. As to section 817 itself, if it be assumed that a later Congress may, by legislation not purporting to be retroactive, place a controlling interpretation upon the act of a much earlier Congress, it is still impossible to say that by the Revenue Act of 1938 any such interpretation as that now pressed upon us was made. The reason for the enactment of section 817 clearly appears from the Committee Report:[16] "This section subjects to federal income taxation the capital gain realized by a joint stock land bank on the purchase of its own obligations or of mortgages made by it. * * * Under the Federal Farm Loan Act, however, which governs the taxability of obligations of joint stock land banks, such income is exempt. The Committee is of the opinion that such income ought to be taxed." It will be observed that this explanation limits the purview of the section to the realization of gain by a joint stock land bank on the purchase of its own obligations, the very limitation which was placed upon the 1933 ruling by that made in 1935. And in fact the section as originally introduced was also limited to that subject. The earlier draft appearing as section 816 read:[17]

Notwithstanding the provisions of section 26 of the Federal Farm Loan Act, as amended, gain realized on the acquisition by a joint stock land bank of obligations issued by it or mortgages made by it if such obligations or mortgages are made or issued after the date of the enactment of this act shall not be exempt from federal income taxation.

Before final passage the section was amended to take its present form and to cover all profit from the purchase and sale of such bonds, but the reason for the broadening of the language does not appear, and under the circumstances it seems clear that it was merely so enacted with the familiar precautionary regard for the possibility that the exempting statute might later be construed in the way now contended for. This is far from permitting us to assume that it was a legislative construction of the earlier statute broader than that then being asserted by the administrative agency concerned. "The purpose of the variation may be to clarify what was doubtful and so to safeguard against misapprehension as to existing law." *Helvering* v. *New York Trust Co.*, 292 U. S. 455, 468; *Mead Corporation*, 38 B. T. A. 687, 705.

---

[16] Senate Finance Committee Report, Revenue Bill of 1938, 75th Cong., 3d sess., Report No. 1567, p. 47.

[17] Sec. 816, H. R. 9682, 75th Cong., 3d sess., Jan. 5 (Calendar day April 5), 1938.

Finally, it is argued that, regardless of other considerations, respondent is now estopped to contend that the present petitioners are liable for these taxes. It appears that the petitioner Stewart was aware of statements made by officials of the Government, relating to tax exemption of farm loan bonds, that he examined such statements, that he construed them as applying to the present transactions, and that he relied thereon in connection with the purchases undertaken by him. It would seem a complete reply to this contention that, as we have said, the statements referred to are without application to the present situation, and that any error made in so applying them is attributable to petitioners.

To this statement it may be added, however, that ordinarily a representation of law will not support an estoppel, *Sturm* v. *Boker*, 150 U. S. 312; that the restriction unless otherwise provided [18] upon the power of administrative officers to construe the law is well known and well established, *Old Farmers Oil Co.*, 12 B. T. A. 203, 214; that the existence of the exemption here asserted was purely a question of the proper construction of the basic law; and that one who, notwithstanding these considerations, relies upon such statements if they are not justified by the law under which they are made must be held to have done so at his peril.

It does not follow that the petitioner, Agricultural Securities Corporation, is subject to the penalty imposed by section 291 of the Revenue Act of 1934 for failure to file a return. We have found as a fact that the return was actually filed, although not within the time prescribed by law, and that the failure to file it sooner was due to reasonable cause and not to willful neglect. Under these circumstances the provision is inapplicable.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

KERN, dissenting: The principal question involved in these proceedings is whether capital gains resulting from the sale or redemption of bonds issued under the Federal Farm Loan Act of 1916 constitute income derived from the bonds within the meaning of the provisions of the act which expressly exempt such bonds "and the income derived therefrom" from Federal, state, municipal, and local taxation.

That capital gains constitute income derived from the investment was expressly pointed out by the Supreme Court in *Eisner* v.

---

[18] E. g., Revenue Act of 1928, sec. 606, as amended by Revenue Act of 1938, sec. 801; Securities Act of 1933, 48 Stat. 85, as amended 48 Stat. 908, 15 U. S. C., sec. 77 s.

*Macomber*, 252 U. S. 189, and *Merchants Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509. In the former case the Court, after setting out its now classical definition of income, said by way of explanation and with particular reference to capital gains:

> * * * Here we have the essential matter: not a gain accruing to capital, not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value proceeding from the property, severed from the capital however invested or employed, and coming in, being "derived," that is, received or drawn by the recipient [the taxpayer] for his separate use, benefit, and disposal; that is income derived from property. Nothing else answers the description.

In the latter case the Court, in answering the contention that capital gain did not constitute income, used the following pertinent language:

> * * * since the fund here taxed was the amount realized from the sale of the stock in 1917, less the capital investment as determined by the trustee as of March 1, 1913, it is palpable that it was a "gain or profit" "produced by," or "derived from," that investment, and that it "proceeded," and was "severed" or rendered severable, from it, by the sale for cash, and thereby became that "realized gain" which has been repeatedly declared to be taxable income within the meaning of the constitutional amendment and the acts of Congress.

That capital gains do *not* constitute income derived from the *act of sale or conversion* of the capital investment was implicit in the decisions by the Supreme Court in the cases of *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179, and *Lynch* v. *Turrish*, 247 U. S. 221. In those cases, the Court held that capital gains accrued prior to the effective date of the Sixteenth Amendment, but only realized by sales occurring after such effective date, did not constitute taxable income. If the income had been derived from the act of sale (and not merely realized by it), instead of from the capital investment, it is evident that a different result would have been reached, since the act of sale occurred after the effective date of the Sixteenth Amendment, and, if the proceeds had been considered as income derived from such sales, they must have been held to be taxable income.

Respondent contends, however, that a dictum of the Supreme Court, contained in its opinion rendered in the case of *Willcuts* v. *Bunn*, 282 U. S. 216, must lead us to the conclusion that capital gains do not constitute income derived from the capital investment. That case held that the capital gains realized by a taxpayer on the purchase and sale of state bonds were subject to Federal income taxation, since the tax was not on the obligations of the state or on the investment therein, as such, and did not impose a substantial burden on the state's borrowing power, and therefore, the tax was not interdicted by any constitutional implication.

We do not consider that the dictum from *Willcuts* v. *Bunn, supra*, quoted in the majority opinion, intends to or does reverse the holding by the Supreme Court either expressly or by implication in the cases which are cited *supra* to the effect that capital gains constitute income derived from capital investments which is merely realized by the sale or conversion of such investments. While the income may *result* from both the increase in the value of the investment, and its sale or conversion, the income, under the decided cases of the Supreme Court, is *derived* from the capital investment. This principle is recognized by the Supreme Court in *MacLaughlin* v. *Alliance Insurance Co. of Philadelphia*, 286 U. S. 244, 249, a case subsequent to *Willcuts* v. *Bunn, supra*, in which the Court used this language: "while increase in value of property, not realized as gain by its sale or other disposition, may, in an economic or book-keeping sense, be deemed an addition to capital in a later period, * * * it is nevertheless *a gain from capital investment* which when *realized by conversion into money* or other property, constitutes profit which has consistently been regarded as income within the meaning of the Sixteenth Amendment and taxable as such in the period when realized." [Italics ours.]

Applying this rule to the facts of the instant case, it is obvious that the income subject to the tax out of which arises the deficiency involved herein is income derived from Federal farm loan bonds, and is, therefore, exempt from taxation pursuant to the express provisions of section 26 of the Federal Farm Loan Act.

It should be borne in mind that we are here called upon to construe an express exemption. The case of *Hubert De Stuers*, 26 B. T. A. 201, construed an entirely different exemption. Therefore, that case is not in point, and is only "analogous" in that it construed an exemption. The statute in that case exempted the "principal and interest" of certain Government bonds. The question was whether a tax on capital gains resulting from the redemption at par of bonds which had been purchased at a discount might be considered as a tax upon the principal of the bonds. In the instant cases the question is whether capital gains constitute "income derived from" the bonds, an issue not present in the *De Stuers* case. The *Phipps* case and *Igleheart* case, cited as "analogous", are even less pertinent.

The majority opinion indicates that the case of *Willcuts* v. *Bunn* may be considered as authority for the proposition that "there was serious doubt whether the Congress was authorized to exempt these obligations from capital gains taxes of states, localities, and munici-palities." It is difficult to understand how the majority opinion reaches this astonishing result, since that case in no way, inferen-

tially or otherwise, dealt with the question of whether Congress had the power under the Constitution to exempt obligations by specific statutory provision from tax. That case was solely concerned with the question of whether, by reason of our Federal system of Government, there would be, by implication, a prohibition on the power of the United States to levy an income tax on capital gains derived from state bonds. The startling conclusion of the majority opinion that, when Congress expressly exempts from tax capital gains derived from bonds issued under its authority as instrumentalities of the United States, it is granting "an immunity possibly beyond its power" may only be explained by the fact that the conclusion is based upon an erroneous reading of the case of *Willcuts* v. *Bunn*.

The conclusion of the majority opinion that the word "income", as used in section 26 of the Farm Loan Act, may have been used in order to include not only interest, but also periodic payments to bondholders by receivers of insolvent banks in liquidation of the principal of such bonds, together with accrued interest (the only claims which the bondholders would have for liquidation), presumes such a naive misconception of legal principles on the part of Congress as to be incredible.

For all of these reasons, I respectfully dissent.

LEECH agrees with this dissent.

---

BLACK, dissenting: I agree with most of what is said in Member Kern's dissent, but I wish to add some words of my own. I do not think the majority opinion gives sufficient consideration to the fact that what the Supreme Court was deciding in *Willcuts* v. *Bunn*, 282 U. S. 216, was not an express congressional exemption but an implied constitutional immunity. The two subjects are very different and different rules of construction apply.

The applicable revenue act which was before the Supreme Court in *Willcuts* v. *Bunn* was the Revenue Act of 1924. Section 213 (b) (4) of that act reads in part as follows:

(b) The term "gross income" does not include the following items which shall be exempt from taxation under this title: * * *

(4) Interest upon (A) the obligations of a State, Territory or any political subdivision thereof or the District of Columbia: * * *

Manifestly profits derived from the purchase and sale of state and municipal bonds was not interest upon such bonds. Therefore, plainly Congress had not specifically exempted such gains from taxation under section 213 (b) (4). The taxpayer in that case was not so contending, but was contending that such profits and gains

were constitutionally immune from taxation. This contention the Supreme Court denied upon the ground that the language contained in section 213 (a) of the Revenue Act of 1924 plainly included gains from the purchase and sale of capital assets and was broad enough to include profits from the purchase and sale of state and municipal bonds and that a tax on such gains was not a tax on either the principal or the interest of such bonds and, therefore, there was no constitutional immunity.

In the instant case the specific exemption contained in the Revenue Acts of 1932 and 1934 exempting interest upon bonds issued under the provisions of the Federal Farm Loan Act is exactly the same as the provision we have quoted above from the 1924 Revenue Act exempting interest from municipal and state bonds. So if that were all the specific exemption there is, I would certainly say that *Willcuts* v. *Bunn* controls and petitioners should lose. But that is not all.

There is still to be considered section 26 of the Federal Farm Loan Act which reads in part as follows: "Section 26. * * * First mortgages executed to Federal Land Banks or to joint stock land banks and farm loan bonds issued under the provisions of this Act, shall be deemed and held to be instrumentalities of the Government of the United States and as such they and the income derived therefrom shall be exempt from Federal, municipal and local taxation." Section 26 of the Federal Farm Loan Act, although not specifically carried in the Revenue Acts of 1932 and 1934, applicable to the taxable years here in question, was not repealed by any provision in said acts and was in full force and effect in both taxable years. It was not materially altered until section 817 of the Revenue Act of 1938 altered the exemption in a very material manner, but then only as to future bond issues. Therefore, during the two taxable years under consideration we have to construe an exemption which was much broader than a mere interest exemption. It was an exemption which specifically exempted from Federal taxation the "income derived" from Federal farm loan bonds.

It should require no citation of authorities to support the rule that, in construing this language of Congress, Congress will be deemed to have used the words in their plain, ordinarily understood meaning. Can it be plausibly argued that at the time Congress wrote these words into section 26 of the Federal Farm Loan Act it was not commonly and ordinarily understood that the expression "income derived from property" included gains and profits derived from the purchase and sale of property as well as such things as interest and rents derived from the property.

I don't think it can plausibly be so argued. I will concede that if Congress were now writing such a statute as section 26 of the Federal Farm Loan Act, and used the same language, the construction contended for by respondent would be entirely reasonable in the light of the Supreme Court's decision in *Willcuts* v. *Bunn*, but we are construing a statute written in 1916 and not one written in 1939, and it is what Congress meant in 1916 that should control us in the instant case.

The case of *Hubert De Stuers*, 26 B. T. A. 201, is also cited and relied upon in the majority opinion. In my judgment, as Member Kern points out in his dissent, that case has no bearing on the question we have here to decide. In that case we had before us for construction section 3 of the Liberty Loan Act as amended exempting United States bonds while beneficially owned by nonresident aliens, "both as to principal and interest, from any and all taxation, etc." We held that a tax derived from the purchase and sale of such bonds was not a tax on either the principal or the interest upon such bonds, following *Willcuts* v. *Bunn, supra.*

If the exempting statute which we have to construe in the instant case, section 26 of the Farm Loan Act, is no broader than the one present in the *De Stuers* case, then the Government should undoubtedly win because a tax on the gain derived from the purchase and sale of Federal farm loan bonds is not a tax on the principal of such bonds nor is it a tax upon the interest of such bonds.

But for reasons I have already endeavored to point out, the exemption which we have here to construe is considerably broader than the one which we had in the *De Stuers* case because an income tax on the profits arising from the purchase and sale of such bonds is a tax on the "income derived therefrom" as that expression was intended to mean when used by Congress in section 26 of the Federal Farm Loan Act. Interest is, of course, income, but it is only one kind of income. As used in the revenue act and the Federal Farm Loan Act, it is the premium paid for the use of money. Income, on the other hand, as used in the same acts, is a generic term, which has a meaning considerably broader than interest and certainly broad enough at the time Congress wrote the act to include gains and profits derived from the purchase and sale of capital assets, including farm loan bonds.

For the reason that I think the majority opinion construes section 26 of the Federal Farm Loan Act more narrowly than Congress intended, I respectfully record my dissent.

LEECH and HARRON agree with this dissent.