*Decision will be entered under Rule 50.*

A. C. MONK & COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10750. Promulgated January 14, 1948.

*Stanley Worth, Esq.*, for the petitioner.
*James C. Maddox, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: The question presented by the instant proceeding is whether petitioner, a domestic corporation, should have withheld during the taxable years a tax from the interest paid by it to a Chinese national out of bank accounts maintained in China for the convenience of petitioner in the conduct of its Chinese branch business. The interest so paid was upon deposits of money made by the Chinese national with petitioner, pursuant to the contract set out in our findings, for the primary purpose of protecting petitioner on sales of its product made on credit in China by the Chinese national acting as petitioner's agent. The liability of petitioner for withholding such tax is predicated by respondent on sections of the applicable revenue acts which differ in no material way from section 143 (b) of the Internal Revenue Code, as follows:

All persons, in whatever capacity acting, including * * * employers, * * * having the control, receipt, custody, disposal, or payment of interest (except interest on deposits with persons carrying on the banking business paid to persons not engaged in business in the United States), dividends * * * or other fixed or determinable annual or periodical gains, profits, and income (but only to the extent that any of the above items constitutes gross income, from sources within the United States), of any nonresident alien individual, * * * shall * * * deduct and withhold from such annual or periodical gains, profits, and income a tax equal to 30 per centum [1] thereof, * * *. [Footnote added.]

To the general terms of section 143 (b) there are two qualifications. The first makes the exception of interest paid on a deposit with persons carrying on the banking business. The petitioner is not in the banking business.

The second qualification to section 143 (b) states that withholding should be made only to the extent that the interest, or other items of income, constitute gross income from sources within the United States. This particular qualification was added parenthetically and without congressional comment on the language of section 143 of the Revenue Act of 1936, but it had appeared in other sections of prior acts and in the regulations. See, for example, section 213 (c) of the Revenue Acts of 1918 to 1934, inclusive, and section 212 (a) of the Internal Revenue Code. In these other sections its qualification has served to limit the taxation of a nonresident alien.

---

[1] The applicable tax rates for the withholding in question were changed to 8, 4, 10, and 16½ per cent by the Acts of 1932, 1934, 1936, and 1940.

The position of the petitioner in the instant case is that the interest paid by it to the nonresident alien does not constitute gross income from a source within the United States and therefore is not subject to withholding.

Section 119 of the Internal Revenue Code states:

(a) GROSS INCOME FROM SOURCES IN UNITED STATES.—The following items of gross income shall be treated as income from sources within the United States:

(1) INTEREST.—Interest from the United States, any Territory, any political subdivision of a Territory, or the District of Columbia, and interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, not including—

(A) interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States, or

(B) interest received from a resident alien individual, a resident foreign corporation, or a domestic corporation, when it is shown to the satisfaction of the Commissioner that less than 20 per centum of the gross income of such resident payor or domestic corporation has been derived from sources within the United States, as determined under the provisions of this section * * *.

\* \qquad \* \qquad \* \qquad \* \qquad \* \qquad \* \qquad \*

(c) GROSS INCOME FROM SOURCES WITHOUT UNITED STATES.—The following items of gross income shall be treated as income from sources without the United States:

(1) Interest other than that derived from sources within the United States as provided in subsection (a) (1) of this section:

\* \qquad \* \qquad \* \qquad \* \qquad \* \qquad \* \qquad \*

We believe that the payments here involved were of interest on an interest-bearing obligation of a corporate resident, and, therefore, under the statute above quoted, constituted gross income of a nonresident alien from a source within the United States from which the petitioner should have withheld a tax pursuant to section 143 (b).

The petitioner does not deny that the payments were of interest and it is apparent that they were. The nonresident alien made deposits of money with petitioner; petitioner used this money; and the payments of interest were made to the alien as compensation for the use of the money so deposited.

The petitioner argues that the contractual obligation of the petitioner to pay interest is not an interest-bearing obligation within the meaning of the statute. While the statute states that all interest from the "United States * * *" is taxable to a nonresident, it provides that only interest on "bonds, notes, or other interest-bearing obligations" of a resident is taxable to the nonresident. Therefore, petitioner contends, "other interest-bearing obligations" must be given an interpretation confined by the doctrine of *ejusdem generis* and means a written interest-bearing obligation similar to a bond or a note.

We do not agree. The meaning of the words "other interest-bearing obligations" has been specifically held to be not so limited by the

doctrine of *ejusdem generis*. *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84; *Helvering* v. *British-American Tobacco Co., Ltd.*, 69 Fed. (2d) 528; affd., 293 U. S. 95; *Motty Eitingon*, 27 B. T. A. 1341; *Francois Lang*, 45 B. T. A. 256; reversed on another point, 133 Fed. (2d) 442.

In the *Stockholms Enskilda Bank* case, *supra*, after deciding that the rule of *ejusdem generis* had no application, the Court said:

The foregoing views are put beyond all fair doubt, if otherwise any would remain, by the consideration of a qualification contained in the section itself. After declaring that interest on bonds, notes, or other interest-bearing obligations shall be treated as income from sources within the United States, the section immediately proceeds to exclude from that language "interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States. * * *" It is apparent from this exception that Congress understood that, unless the exception were made, the interest on such deposits would fall within the term "interest-bearing obligations," and, to prevent that result, it was necessary to specifically create the exception. The conclusion fairly results that the clause was intended to include all interest-bearing obligations not specifically excepted. * * *

The final term used in section 119 (a) (1) is the word "residents." It is apparent that petitioner was a corporate resident of the United States. That it conducted a branch of its business in China can not affect its status as a domestic corporation. Petitioner does not contend and the evidence does not show that less than 20 per cent of its gross income was derived from sources within the United States.

The petitioner's payment to Pun meets the three tests of what shall be treated under section 119 (a) as gross income from a source within the United States: (1) It was interest, (2) on an interest-bearing obligation, (3) of a corporate resident.

Petitioner strenuously argues, however, that the facts presented by the evidence disclose that the actual source and the only possible source of the payments to Pun was in China. It was there that the petitioner's products were sold by Pun, the proceeds therefrom deposited in petitioner's Chinese bank deposits, and the expenses of the petitioner's Chinese branch, including the interest payments to Pun, were paid by checks drawn in China on Chinese banks.

We are unable to agree with this argument.

The use of the money deposited with petitioner by Pun gave rise to the obligation of petitioner to pay the interest here involved. This obligation has its source in the obligor, and thus the source of the payment of the obligation is the residence of obligor. There the right to payment arises and there the right may be enforced. The only qualification is that the payment be actually made by the resident obligor or on its behalf and pursuant to its obligation. See *Tonopah & Tidewater R. R. Co., Ltd.*, 39 B. T. A. 1043; reversed, 112 Fed. (2d) 970.

The fact that for the mutual convenience of petitioner and Pun

the payments were made in China by checks drawn on Chinese banks is irrelevant.

For a general discussion of this point see Mertens, Law of Federal Income Taxation, par. 45.29 and cases cited, including *Standard Marine Insurance Co., Ltd.*, 4 B. T. A. 853, 862; *Marine Insurance Co. Ltd.*, 4 B. T. A. 867; *Estate of L. E. McKinnon*, 6 B. T. A. 412, 413; *Sumitomo Bank, Ltd.* v. *Commissioner*, 19 B. T. A. 480, 484.

The only remaining question is whether the penalty of 25 per cent should be assessed because of petitioner's failure to file the required returns within the time prescribed by law. Under the Revenue Acts of 1932 and 1934 the imposition of such a penalty was mandatory unless the taxpayer filed a return. After the Revenue Act of 1936 the filing of a return is not a prerequisite to the lifting of the penalty if it is shown that the failure to file the return was due to reasonable cause. What is reasonable cause is a question of fact. *Commissioner* v. *Lane-Wells Co.*, 321 U. S. 219.

Petitioner's sole contention on this issue is that "the very fact that the question is unique and the scarcity of authorities would undoubtedly constitute 'reasonable cause.'" There is no evidence as to the petitioner's motives and reasons for failing to file a return. These have been left to conjecture. Upon this record, we can not conclude that petitioner's failure to file returns was due to reasonable cause and not to willful neglect. See *Palm Beach Trust Co.*, 9 T. C. 1060.

Reviewed by the Court.

*Decision will be entered for the respondent.*