WALTER A. HOWKINS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3563–65. Filed March 27, 1968.

*David Joseph*, for the petitioner.
*William F. Chapman*, for the respondent.

### OPINION

RAUM, *Judge:* The Commissioner, pursuant to sections 143(b) and 1441(a) of the Internal Revenue Codes of 1939 and 1954, respectively, determined deficiencies against petitioner in respect of his failure to withhold tax at source on payments of income to a nonresident alien individual for the following years and in the following amounts:

| Year | Deficiency | Year | Deficiency |
|------|-----------|------|-----------|
| 1950 | $168 | 1956 | $360 |
| 1951 | 300 | 1957 | 360 |
| 1952 | 360 | 1958 | 360 |
| 1953 | 360 | 1959 | 360 |
| 1954 | 360 | 1960 | 360 |
| 1955 | 360 | 1961 | 360 |

The question for decision is whether alimony payments made by petitioner, a resident of the United States, to his ex-wife, a nonresident alien, constituted "gross income from sources within the United States" where the payments were made from an account maintained by petitioner in England. The facts have been largely stipulated.

Petitioner is, and at all the periods involved herein has been a resident alien in the United States, whose present residence is at R.D. 1, West Redding, Conn.

On August 30, 1949, an agreement was entered between petitioner and his then wife, Lesley Margaret Howkins, a resident of the city and county of Northampton, England. Paragraph Twelfth of that agreement reads as follows:

> The husband agrees to pay to the wife, as an allowance for her support and maintenance a minimum net sum of One Hundred Dollars ($100) per month, said payments to be credited to the account of the wife at Westminster Bank Limited, Northampton, England. Such payments for the support and maintenance of the wife shall cease on her death or remarriage.

A final decree of divorce was issued by the Superior Court of Rhode Island on April 10, 1950.

Petitioner, in individual income tax returns filed by him in 1950 and 1951, claimed deductions for alimony payments of $560 and $1,000, respectively. For the years 1952 through 1961, inclusive, petitioner, in joint returns filed with his present wife, Elizabeth P. Howkins, claimed deductions of $1,200 per year, as alimony. All such alimony payments were made by crediting to Lesley Margaret Howkins' account in Westminster Bank Ltd., Northampton, England, payments made, upon petitioner's order, from an account maintained by him with C. Hoare & Co., bankers, of 67 Park Lane, London, England. Although petitioner had claimed deductions for alimony in his own (or joint) income tax returns for each of the years 1950–61, he at no time during any of those years filed the annual return (Form 1042) required in respect of income tax to be paid at source, nor did he ever withhold income tax from the alimony payments made to his former wife.

The following schedule shows petitioner's foreign income (from C. Hoare & Co.) for the years 1953–61, the amount of United Kingdom tax paid on such foreign income, and the amount of foreign tax credit claimed by petitioner for each of these years:

| Year | Petitioner's foreign income | U.K. tax | Foreign tax credit |
|---|---|---|---|
| 1953 | $1,010.22 | $430.97 | $281.32 |
| 1954 | 1,838.95 | 827.53 | 374.37 |
| 1955 | 1,293.48 | 549.73 | 350.25 |
| 1956 | 1,830.42 | 778.93 | 493.47 |
| 1957 | 1,787.38 | 759.64 | 413.05 |
| 1958 | 1,139.04 | 484.12 | 344.75 |
| 1959 | 1,422.68 | 551.29 | 370.44 |
| 1960 | 1,882.02 | 729.28 | 532.10 |
| 1961 | 1,181.90 | 393.73 | 313.22 |

During the years 1950–52, petitioner had income from salary in the amounts of $5,600, $12,500, and $11,561.25, respectively. During the years 1953–61 petitioner conducted a wholly owned import-export business, which had reported sales, cost of goods sold, gross profit, expenses and other deductions, and net profit, as follows:

| Year | Sales | Cost of goods sold | Gross profit | Expenses and other deductions | Net profit (or loss) |
|------|-------|--------------------|--------------|-------------------------------|----------------------|
| 1953 | $14,681.33 | $8,723.80 | $5,957.53 | $4,841.55 | $1,115.98 |
| 1954 | 14,355.29 | 9,074.88 | 5,280.41 | 6,046.80 | [1] (766.39) |
| 1955 | 27,218.95 | 25,296.17 | 1,922.78 | 2,606.16 | (683.38) |
| 1956 | 43,619.24 | 39,245.05 | 4,374.19 | 2,421.87 | 1,952.32 |
| 1957 | 43,590.20 | 35,871.05 | 7,719.15 | 15,219.08 | (7,499.93) |
| 1958 | 37,652.03 | 19,257.08 | 18,394.95 | 11,012.15 | 7,382.80 |
| 1959 | 45,619.32 | 35,495.74 | 10,123.58 | 13,636.95 | (3,513.37) |
| 1960 | 51,996.80 | 32,908.22 | 19,088.58 | 15,447.82 | 3,640.76 |
| 1961 | 13,852.69 | 10,062.40 | 3,790.29 | 6,288.20 | (2,497.91) |

During the years 1952–61 petitioner's present wife was a fashion editor and earned substantial amounts of income. The total amounts of adjusted gross income from all sources and net taxable income (computed after deductions and exemptions), as reported for both spouses on their joint returns for 1952–61, were as follows:

| Year | Adjusted gross income [2] | Net taxable income | Year | Adjusted gross income [2] | Net taxable income |
|------|---------------------------|--------------------|------|---------------------------|--------------------|
| 1952 | $38,950.33 | $23,519.25 | 1957 | $24,907.51 | $16,503.61 |
| 1953 | 27,445.47 | 19,918.70 | 1958 | 37,274.76 | 29,902.50 |
| 1954 | 18,569.09 | 11,420.32 | 1959 | 31,066.52 | 22,005.64 |
| 1955 | 32,402.49 | 24,148.47 | 1960 | 38,703.89 | 27,356.22 |
| 1956 | 34,266.24 | 23,943.10 | 1961 | 34,335.34 | 24,227.02 |

Section 1441 of the Internal Revenue Code 1954,[3] like its substantially identical predecessor, section 143(b) of the Internal Revenue Code of 1939, imposes a duty on "all persons" having control over certain "items of income" of a nonresident alien to withhold and deduct a tax on such income, but only to the extent that the particular item constitutes "gross income from sources within the United States." Clearly, petitioner had the requisite control contemplated by the statute over the alimony payments made to his former wife, a nonresident alien, since it has been stipulated that those payments were made from an account maintained by petitioner with bankers in England, at his order. It is equally clear that the alimony payments in question were "fixed or determinable annual or periodical gains, profits and income," the catchall provision of section 1441(b), which enumerates the items

[1] The parties have, however, stipulated that petitioner had income in 1954 of $3,766.86. Elizabeth P. Howkins, petitioner's present wife, reported net income from her business as a "fashion editor" in 1954 of $4,533.25. The $3,766.86 figure stipulated by the parties most likely resulted from the netting of the $766.39 loss sustained by petitioner's import-export business against the gain from his wife's business in that year.

[2] Any losses sustained by petitioner in his import-export business are reflected in the adjusted gross income.

[3] SEC. 1441. WITHHOLDING OF TAX ON NONRESIDENT ALIENS.

(a) GENERAL RULE.—* * * all persons, in whatever capacity acting * * * having the control, receipt, custody, disposal, or payment of any of the items of income specified in subsection (b) (to the extent that any of such items constitutes gross income from sources within the United States), of any nonresident alien individual, * * * shall * * * deduct and withhold from such items a tax equal to 30 percent thereof

(b) INCOME ITEMS.—The items of income referred to in subsection (a) are interest, * * * dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, * * *

of income subject to withholding under the statute, *Albert R. Gallatin Welsh Trust*, 16 T.C. 1398, 1400, affirmed 194 F. 2d 708 (C.A. 3), certiorari denied 344 U.S. 821. So much is not disputed by petitioner. Rather, he contends that his income from U.S. sources during the years in issue was insufficient to cover the alimony payments made in those years, and in some years was completely nonexistent; that he did, however, have foreign income from a trust in England which, due to regulations of the Bank of England, could only be used within the United Kingdom, and which in almost every year was in excess of the amounts required to satisfy his obligation under the support agreement of August 30, 1949; and he asks us to conclude that the alimony payments which he made to his former wife must therefore have constituted, in whole or in part, gross income from sources outside the United States not subject to withholding of U.S. tax. We think petitioner's position is unsound.

In the first place, it must be remembered that petitioner is not the taxpayer; the taxpayer is his former wife. If the alimony payments are of such character that they represent income in her hands, it is immaterial whether petitioner himself had any income or whether he made such payments out of income or out of capital. *Albert R. Gallatin Welsh Trust, supra*. Moreover, these payments were taxable to the former wife only by reason of section 871(a)(1) of the 1954 Code which imposes a 30-percent tax [4] upon certain specified types of income such as dividends, rents and salaries, as well as upon "other fixed or determinable annual or periodical gains or profits, and income" received by a nonresident alien "from sources within the United States." There can be no reasonable dispute that alimony qualifies as "fixed or determinable annual or periodical" income within the meaning of these provisions, just as it comes within the comparable language of section 1441(b). And when petitioner claimed a *deduction* in each of *his own* returns (individual or joint) for alimony paid to his former wife, it was undoubtedly on the basis that such alimony was taxable to her. For, the underlying theory of section 215 which allows the deduction to the husband is that the payments will be taxable in the hands of the wife. See H. Rept. No. 2333, 77th Cong., 2d Sess., pp. 46, 71–73; S. Rept. No. 1631, 77th Cong., 2d Sess., pp. 83–86; 88 Cong. Rec. 6377. Thus, by claiming the deduction for alimony payments over the years, petitioner has in effect proceeded upon the assumption that they were taxable to his former wife—an assumption that was possible only if the further condition were satisfied to the effect that such income was received by her "from sources within the United States." Yet, in order to defeat his obligation under the with-

---

[4] This flat-rate tax was made applicable during the years involved only to nonresident aliens who are not engaged in trade or business within the United States, and whose total annual income of the type spelled out in sec. 871(a)(1) plus certain net capital gains does not exceed $15,400. See sec. 871(b).

Corresponding provisions are contained in sec. 211 of the 1939 Code.

holding provisions of section 1441, petitioner argues that the alimony payments were not "from sources within the United States." Petitioner cannot have it both ways. We think that he correctly took deductions for these payments, that they were from sources within the United States, and that he is therefore liable under the withholding provisions of the Code.

The fallacy in petitioner's present position is his groundless assumption that the London bank account from which the alimony was paid was the "source" of the payment within the meaning of the statute. The real and immediate "source" of the alimony was petitioner himself, a resident of the United States. And his obligation to make the payments had its source in turn in contractual provisions, as well as in a divorce decree of an American court in Rhode Island.[5]

Petitioner's emphasis upon the sources of income available to him to make these payments and even upon the origin of the actual physical funds used to satisfy his obligation of support misconceives the meaning of the phrase "income from sources within the United States." Congress was not referring here to the origin of the physical means of payment, but rather to the place where the recipient's income was "produced." That this interpretation of the statute is the correct one, is illustrated by the definitive construction which Congress has accorded to the phrase "gross income from sources within the United States" in other contexts.

Although the Code does not contain a comprehensive general rule or set of rules for determining the "source" of an item of income, a number of source-of-income rules, now contained in sections 861–864, have been provided for certain common classes of income. While alimony is not among the categories of income for which a statutory source-of-income rule is available,[6] the rules which are set forth show,

---

[5] The record does not specifically state that the Rhode Island decree incorporated the terms of the contract, but the stipulation does indicate either that they were so incorporated or that the decree independently spelled out the same obligations; for the payments referred to in the contract are designated as an allowance for "maintenance and support" while the stipulation also refers to them as "alimony," thereby suggesting that provision therefor was made in the decree. In any event, the burden of proof was upon the petitioner, and he has failed to present any evidence to the contrary. In view of that burden we cannot assume any facts in his favor and must proceed upon the assumption that omitted facts are unfavorable to him. Cf. *Wichita Terminal Elevator Co.*, 6 T.C. 1158, 1165, affirmed 162 F. 2d 513 (C.A. 10).

[6] The items of income for which specific source-of-income rules are given by statute are interest, dividends, compensation for personal services, rentals and royalties, sales of real property and sales of personal property purchased outside the United States. See secs. 861–864, I.R.C. 1954. In addition, the regulations provide source-of-income rules for the sale of manufactured personal property, sec. 1.863–3, income from transportation services between points within and without the United States, sec. 1.863–4, and income from telegraph and cable services between points within and without the United States. Sec. 1.863–5. The absence of a statutory test for alimony does not, however, imply that Congress intended to exclude alimony from the items of income subject to withholding or from the income tax imposed on nonresident aliens, for it is well settled that secs. 861–864 and their predecessors were not intended as an all-inclusive catalogue of types of income which can be derived from "sources within the United States." *Albert R. Gallatin Welsh Trust*, 16 T.C. at 1401–1402, *Hubert De Stuers*, 26 B.T.A. 201, 205.

For a survey of this general area, somewhat outdated by the Foreign Investors Tax Act of 1966 but still useful, see Dailey, the "Concept of the Source of Income," 15 Tax L.Rev. 415 (1960).

for the most part, that Congress thought of the "source" of an item of income in terms of the place where the income was "produced." Thus, as a general rule, income received as the result of services performed in the United States, or from the sale or rental of property located within the United States, is to be treated as gross income from sources within the United States, without regard to the payor's sources of income or the origin of the funds used to effectuate payment, for in such cases the income is the proximate result of activity or property within the United States. See subsecs. (a)(3), (4), (5), and (6) of sec. 861, I.R.C. 1954.

Especially instructive for our purposes is the source-of-income rule provided by statute for the payment of interest, for, like alimony, interest involves an obligation, usually to make periodic payments over a period of time, which is not incurred in exchange for property or services. Lacking these touchstones, Congress turned to the residence of the obligor—the situs of the debt—as the place where the income is produced, and thus the source of the income. See section 861(a)(1), I.R.C. 1954. As was said in *A. C. Monk & Co.*, 10 T.C. 77, a case in which a domestic (and therefore, resident) corporation was required to withhold a tax on interest paid to a nonresident alien in spite of the fact that the interest payments were made from a foreign bank account and were derived from foreign income (p. 82):

> This obligation has its source in the obligor, and thus the source of the payment of the obligation is the residence of obligor. There the right of payment arises and there the right may be enforced. The only qualification is that the payment be actually made by the resident obligor or on its behalf and pursuant to its obligation. * * *

We think the considerations taken into account in *Monk*[7] are equally applicable here and we hold that the alimony payments had their source in the United States.

To be sure, the general rule of section 861(a)(1) that the source-of-interest payments is determined by the residence of the obligor is made subject to several exceptions, one of which is that such interest shall not be considered from sources within the United States if the obligor is a resident alien individual who can show that less than 20 percent of his gross income was derived from sources within the United States for the 3-year period ending with the close of the taxable year preceding the payment of such interest. It is sufficient for our purposes to note in this regard that this exception, like the others, represents a legislative judgment, based upon policy considerations, which Con-

---

[7] Compare *Tonopah & Tidewater Railroad Co., Ltd.*, 39 B.T.A. 1043, 1046–1047, where somewhat similar thoughts were expressed. Although that decision was reversed, 112 F. 2d 970 (C.A. 9), the case itself is distinguishable because the payment was made not by the American obligor but the British parent of the obligor, as guarantor, and therefore the obligor did not have the requisite control of the payment to bring the withholding provisions into play. In the present case, petitioner had absolute control over the payments in question.

gress has not seen fit to make in the case of alimony. We are not, in any event, holding that section 861 is literally applicable to the case at bar, but merely noting that, in the absence of a specific statutory source-of-income rule for alimony, the statutory rules of general application, and especially the general rule for interest payments, present a persuasive analogy.

Finally, we pause to comment upon a factual argument made by petitioner, namely, that the alimony was paid out of a "blocked" or restricted account in London and that he could not in any event have withheld any portion of the alimony for use in paying the tax as withholding agent. The precise thrust of this contention is not clear. The facts set forth earlier in this opinion indicate a failure of proof that petitioner did not have funds within the United States which he might have used for this purpose, or that his use of the London account rather than American funds was anything other than a matter of convenience; and we now add that the record fails to provide convincing proof that had petitioner withheld the 30-percent tax on the alimony paid out of the London account he could not have obtained the amount so withheld for use in discharging his obligation as withholding agent. The only materials presented in this connection consist of two letters that leave the matter entirely obscure. Granted that there were currency restrictions of some kind, there is no showing that official permission to obtain these funds for the purpose of paying U.S. taxes could not have been obtained upon proper application therefor. In this state of the record, we must reject whatever factual argument petitioner may make in respect of this point, even assuming that it might otherwise have a controlling bearing upon this case.

Reviewed by the Court.

*Decision will be entered for the respondent.*

DRENNEN, *J.*, dissents.