ELINOR W. MANNING, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Manning v. Commissioner
Docket No. 10115-76.
United States Tax Court
T.C. Memo 1979-146; 1979 Tax Ct. Memo LEXIS 377; 38 T.C.M. (CCH) 646; T.C.M. (RIA) 79146; April 16, 1979, Filed Richard deY. Manning, for the petitioner. Lewis R. Mandel, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioner's income and self-employment taxes and additions to tax as follows: Addition to tax Year
Deficiency
Sec. 6651(a) [1]
1972
$2897.93
$724.48
1973
2919.20
729.80
1974
2727.00
681.75
The issues for decision are: (1) whether alimony paid to petitioner, a resident of Puerto Rico, by her ex-husband, a resident of New York, New York, constituted gross income derived from sources within Puerto Rico; (2) whether petitioner was liable for self-employment taxes during the years at issue; and (3) whether petitioner is liable for the additions to tax asserted by respondent. All of the facts have been stipulated *380 and are found accordingly. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner Elinor W. Manning was a resident of Puerto Rico on the date the petition herein was filed and during the taxable years in issue. She had resided in Puerto Rico since 1960. Petitioner did not file U.S. individual income tax returns for 1972, 1973 and 1974. Petitioner was formerly married to Richard deY. Manning (Richard), who was a resident of Puerto Rico from 1960 until 1969. In 1969, Richard became a resident of New York, New York, and was a resident thereof during the taxable years in issue. In 1967, Richard filed a divorce action against petitioner and petitioner filed a countersuit against Richard. On January 14, 1969, petitioner and Richard entered into a separation agreement, which made provision for the payment of alimony; expenses of the children; attorney fees of the divorce proceeding; transfer of certain stocks to petitioner; custody of the children with right of visitation in Richard; and for the agreement to be governed "by the laws of New York where [Richard] resides." A decree of divorce, on petitioner's *381 countersuit, was granted by the Superior Court of Puerto Rico, San Juan Division, on February 26, 1969. It specified that "[the] agreement between the parties, presented in writing on January 14, 1969, shall form part of this decree." Petitioner received alimony payments from Richard of $17,083 in 1972, $16,800 in 1973, and $16,800 in 1974. During 1972, 1973, and 1974, Richard owned real estate in Puerto Rico, which produced gross income in excess of the amounts of alimony he paid to petitioner. Petitioner had net earnings from self-employment of $5,806.92 in 1972, $6,614.99 in 1973, and $4,265.82 in 1974. Alimony Payments
The first question for decision is whether alimony paid to petitioner, a resident of Puerto Rico, by her ex-husband, a resident of New York, New York, under the terms of a divorce decree granted by a Puerto Rican court, constituted income derived from sources within Puerto Rico. Petitioner contends that the alimony payments she received were exempt from Federal income taxation under section 933 which provides in pertinent part that: The following items *382 shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Resident of Puerto Rico for entire taxable year. - In the case of an individual who is a bona fide resident of Puerto Rico during the entire taxable year, income derived from sources within Puerto Rico * * *. We previously considered the question of the source of alimony payments in Howkins v. Commissioner,49 T.C. 689 (1968), [2] and held that alimony paid by a resident of the United States to a nonresident alien constitutes gross income from sources within the United States. Petitioner argues that we should reconsider our decision in Howkins or, in the alternative, that that decision is not controlling in the circumstances of this case. Petitioner contends that the rule established in Howkins applies only where the recipient of alimony is a nonresident alien and not where the recipient is a resident of Puerto Rico. Although *383 Howkins arose in the context of section 1441(a), which requires an obligor to deduct and withhold United States income tax on payments to a nonresident alien of gross income from United States sources, the decision turned on a resolution of the question of where alimony payments had their source, the same issue presented herein. We, therefore, think that the fact that Howkins involved a nonresident alien rather than a resident of Puerto Rico is a distinction without a difference. Petitioner also contends that, in Howkins, we drew a false analogy between interest and alimony and, therefore, reached an incorrect result. Petitioner notes a number of differences between alimony and interest, primarily that interest payments are fixed and definite while alimony payments may, in the discretion of a court, be modified. In reaching our decision in Howkins, however, we did not suggest that alimony was to be equated with interest for all purposes. We merely indicated that, from the point of the recipient, alimony payments, like interest payments, have their real and immediate source in the obligor himself. Howkins v. Commissioner, supra at 693.We continue *384 to think that, in this respect, the analogy between interest and alimony is valid. In accordance with the rationale of Howkins, we are not concerned with the origin of the actual funds used by petitioner's ex-husband to satisfy his obligation. Howkins v. Commissioner,supra at 693. [3] It is, therefore, irrelevant that petitioner's ex-husband had income from sources within Puerto Rico or that he had property in Puerto Rico which could have been attached by petitioner had he defaulted on his obligation. The source of the alimony payments to petitioner was her ex-husband himself. For the same reason, the source of those payments is unaffected by the fact that a Puerto Rican court granted the divorce decree or that procedures for enforcement of the decree were available in the Puerto Rican courts. [4]
*385 In short, we find Howkins indistinguishable, insofar as this case is concerned, and we decline to overrule it as petitioner would have us do. Petitioner further asserts that the use of the phrase "income derived from sources within Puerto Rico" in section 933 (emphasis added), in contrast to the phrase "income from sources within the United States" in section 861 through 864 (emphasis added), indicates a Congressional intent that unique source-of-income rules should apply in determining the source of income of residents of Puerto Rico. But these minor semantic variations have no bearing on the issue before us. Firstly, petitioner errs in stating that the phrase "income derived from" is found only in section 933 and not in sections 861 through 864. See, e.g., section 862(a). Furthermore, nothing in the legislative history of section 933 persuades us that Congress attached any significance to the slight difference in language noted by petitioner. H. Rept. 2319, 81st Cong. 2d Sess. 103-105, 1950-2 C.B. 380, 454-455; S. Rept. 2375, 81st Cong. 2d Sess. 100-103, 1950-2 C.B. 483, 554-556. *386 Subchapter N of the Internal Revenue Code provides for taxation of, inter alia, nonresident aliens and residents of Puerto Rico. We derived our decision in Howkins from the rules for the determination of sources of income contained in Part I (section 861 through 864) of Subchapter N. We believe that these definitional rules, and the principles derived therefrom, should be applied uniformly throughout Subchapter N. See section 1.861-1(a), Income Tax Regs. Cf. Roque v. Commissioner,65 T.C. 920, 924 (1976). By employing uniform source-of-income rules we are not, as petitioner suggests, taxing residents of Puerto Rico as nonresident aliens. We are merely determining, on a consistent basis, what income is to be subject to tax, while the actual tax to be imposed is determined under other provisions of the Internal Revenue Code which vary depending upon the residency and citizenship of the taxpayer. Petitioner argues that, in conformity with a Congressional policy of providing economic support of Puerto Rico through favorable tax treatment of residents of Puerto Rico, we should forego taxation of her alimony in order that Puerto Rico *387 may collect additional tax revenue thereon. Petitioner has not furnished us with any analysis of Puerto Rican tax law to support her contention that a decision in her favor herein would enable Puerto Rico to collect any additional tax from her. Nor would any such analysis on our part serve any useful purpose, since we consider petitioner's argument in this respect to be irrelevant. The legislative scheme for taxation of citizens of Puerto Rico, as embodied in section 933, was designed to put the tax treatment of Puerto Rican citizens, who are also citizens of the United States, on the same basis as other United States citizens (see H. Rept. 2319, supra; S. Rept. 2375, supra), with the exception that provision was made for the exclusion from their gross income of income derived from sources within Puerto Rico. There is no indication of any intention to extend the exemption from Federal taxation to income from other sources, even though the revenues of Puerto Rico might thereby be increased. Congress simply intended to allow the Puerto Rican income tax to take the place of the United States income tax only in respect of income from sources within Puerto Rico. H. Rept. 2319, *388 supra,1950-2 C.B. at 426; S. Rept. 2375, supra,1950-2 C.B. at 519. Petitioner's argument that source-of-income rules do not apply to alimony, because the Supreme Court held in Gould v. Gould,245 U.S. 151 (1917), that in the absence of a specific statutory provision alimony payments were not taxable income to the recipient, is also without merit. A specific statutory provision making alimony taxable income to the recipient exists in section 71.[5]
*389 We recognize that, if the residence of the husband is made the decisive factor in determining the source of alimony payments for the purposes of income taxation of the wife, she is exposed to the possibility of an unanticipated [6] tax liability because of the ex-husband's change of residence -- a condition over which she has no control. But we can find no statutory basis for providing relief for the wife in such a situation. supra.
Accordingly, we hold that alimony payments received by petitioner from her ex-husband, who was a resident of New York, New York, were not income derived from sources within Puerto Rico and were not exempt from Federal taxation under section 933. Self-Employment Taxes
Section 1401 imposes a tax on self-employment income. Section 1402(a)(6) requires a resident of Puerto Rico to compute net earnings from self-employment in the *390 same manner as a citizen and resident of the United States, without regard to section 933. Thus, income earned in Puerto Rico is included in net earnings from self-employment. (A)-9 (A)-9 Section 1.1402 (a)-9, Income Tax Regs.; S. Rept. 2375, supra at 103, 1950-2 C.B. at 556; H. Rept. 3124, 81st Cong. 2d Sess. 32, 1950-2 C.B. 580, 588. The amounts of petitioner's self-employment income in the years 1972, 1973, and 1974 are not in dispute. In her petitioner, petitioner objected to respondent's determination, alleging that respondent was discriminatory in his application of section 1401. On brief, petitioner has not advanced this, nor any other, argument with respect to the asserted deficiencies in self-employment tax and appears to have conceded her liability for the amounts determined by respondent. In any event, petitioner has the burden of proof on this issue, Welch v. Helvering,290 U.S. 111 (1933), Rule 142(a), Tax Court Rules of Practice and Procedure, and there is no evidence in the record supporting petitioner's *391 allegation of discriminatory conduct, or otherwise tending to disprove the asserted deficiencies in self-employment taxes for 1972, 1973, and 1974. We hold that petitioner is liable for those deficiencies. Additions to Tax
Respondent determined that petitioner is liable for additions to tax under section 6651(a) for failure to file tax returns. Petitioner has the burden of proving that her failure to file was due to reasonable cause and not willful neglect. Shomaker v. Commissioner,38 T.C. 192 (1962). Petitioner has offered no justification for failure to file returns in respect of her liability for self-employment taxes. There is no question that petitioner was required to file a self-employment tax return, regardless of whether she was required to file a return in respect of other income (section 6017; section 1.6017-1, Income Tax Regs.) and that the provisions of section 6651(a), by their terms, are applicable to any failure to file, since *392 the self-employment tax is included in subchapter A of chapter 61. See also sec. 301.6651-1, Proced. & Admin. Regs. Petitioner argues that the additions to tax should not be imposed because, as to the issue of taxation of the alimony payments, this is a case of first impression. We disagree. The issue of the source of alimony paid by a resident of the United States has been considered by this Court several times. See p. 5 et seq., supra.In any event, petitioner did not offer any evidence that she sought and relied on competent advice as to whether she was required to file a return. Ignorance of the law or even an honest belief that no tax was due does not constitute reasonable cause for failure to file a return where the taxpayer did not make good faith efforts to ascertain whether filing was necessary. Compare Estate of Christ v. Commissioner,54 T.C. 493, 554 (1970), United States v. Rexach,185 F.Supp. 465 (D.P.R. 10960), and Twinam v. Commissioner,22 T.C. 83, 90-91 (1954), with Adams v. Commissioner,46 T.C. 352, 362 (1966), *393 and Shomaker v. Commissioner,supra at 202. Petitioner asserts that there is no evidence in the record to demonstrate that she knew her ex-husband was residing in the United States and that she had, therefore, received United States source income. This argument is misdirected, however, because petitioner has the burden of showing that she had reasonable cause for her failure to file and there is no evidence in the record to indicate that petitioner (who did not testify) did not know that her ex-husband was residing in the United States. Cf. Adams v. Commissioner,supra.Indeed, the record contains some evidence that petitioner knew that Richard resided in the United States. See footnote 6, supra. Moreover this case does not present questions of law or fact so complex as to be sufficient in themselves to indicate reasonable cause for failure to file. Compare Dillin v. Commissioner,56 T.C. 228, 248, (1971); Wurtsbaugh v. Commissioner,13 T.C. 1059, 1065, (1949), revd. on another issue, 187 F.2d 975 (5th Cir. 1951). We hold, therefore, that petitioner is liable for the additions *394 to tax under section 6651(a) for failure ti file her returns for the taxable years in issue. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, and in effect in the taxable years at issue, unless otherwise stated.↩
2. See also, Lamm v. Commissioner,T.C. Memo 1975-95; Lamm v. Commissioner,T.C. Memo 1977-336↩.
3. See also, Lamm v. Commissioner,T.C. Memo. 1975-95; Lamm v. Commissioner,T.C. Memo. 1977-336↩. 4. Although this Court in Howkins v. Commissioner,49 T.C. 689, 693 (1968), mentioned that the divorce decree had been granted by a Rhode Island court, the location of the court within the United States was not crucial to its decision. See Lamm v. Commissioner,T.C. Memo. 1975-95; Lamm v. Commissioner,T.C. Memo. 1977-336, where there was a Swedish divorce and the wife who received the alimony payments was at all pertinent times a resident of Sweden. We note that, while we do not consider it significant to our decision herein, the separation agreement between petitioner and Richard recognized that Richard was a resident of New York and specified that New York law was to govern. See pp. 3-4, supra.↩
5. Petitioner's attempt to seek sustenance from Rev. Rul. 56-585, 1956-2 C.B. 166, is likewise misplaced. That ruling held that an employee of the United States residing in Puerto Rico could deduct alimony paid to his wife, who was a resident of Puerto Rico, even though she could exclude it from her income under section 933. Whatever the merits of this ruling (as to which we express no opinion), it does no more in this regard than does section 933↩ itself, namely, recognize that the husband's earnings from employment by the United States Government could not be considered income from sources in Puerto Rico.
6. We note that petitioner herein obviously was aware of the fact that Richard was a resident of the United States, because the separation agreement specifically recited that Richard resided in New York. See pp. 3-4,↩